IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § § | |
| v. | § | Criminal Action No.: 4:24-cr-00298 |
| EITHAN DAVID HAIM | § § | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS**

TO THE HONORABLE DAVID HITTNER:

The Government respectfully submits this memorandum of law in support of its opposition to defendant Eithan David Haim's motion for a bill of particulars (the "Motion," or "Mot."), filed in this case at Docket No. 23. As set forth in greater detail below, the Court should deny this request because the Government's detailed speaking Indictment, provision of discovery, factual recital provided in the Government's Pretrial Motions, and discussions with defense counsel have provided more than sufficient notice to the defendant of the charges against him.[1]

PROCEDURAL HISTORY

A. Indictment

On May 29, 2024, a grand jury in the Southern District of Texas indicted the defendant with four counts of violating the criminal provisions of the Health Insurance Portability and Accountability Act ("HIPAA").

---

[1] For a recitation of the facts underlying the charges in this case, the Government respectfully refers the Court to the Government's Pretrial Motions, filed on September 6, 2024, at Docket No. 33, p. 2-7.

1

Count One of the Indictment (the "Indictment," or "Ind.") charges that from on or about September 2022 through on or about February 2024, the defendant knowingly and without authorization obtained individually identifiable health information under false pretenses, specifically, electronic medical record maintained by TCH containing the individually identifiable health information of approximately four TCH patients, L.M., A.C., A.S., and G.M., in violation of 42 U.S.C. §§ 1320d-6(a)(2) and (b)(2).  As described in the Government's Pretrial Motions (Dkt. 33, p. 5, 7), Count One comprises the defendant's conduct with regard to pediatric transplant patients whose files he obtained under false pretenses.  The proof at trial will show that the defendant obtained the individually identifiable health information for these patients on April 24, 2023 and May 9, 2023.

Counts Two through Four charge that between on or about April 24, 2023 and May 14, 2023, the defendant knowingly and without authorization obtained and/or wrongfully disclosed the individually identifying information of three patients, M.S., K.B., and G.H., with intent to cause malicious harm to TCH, its physicians, and patients, in violation of 42 U.S.C. §§ 1320d-6(a)(2) and (b)(3).  As described in the Government's Pretrial Motions (Dkt. 33, p. 5-7), Counts Two through Four relate to patients whose information the defendant obtained and then leaked to Person1.  The proof at trial will show that the defendant obtained the individually identifiable information for these patients between May 9, 2023 and May 14, 2023.

B. Discovery

On June 17, 2024 and July 1, 2024, the Government produced Rule 16 discovery to the defendant.  The discovery in the case includes, among other things, Baylor and TCH training materials; HIPAA certifications and test results; TCH's electronic system (EPIC) access records;

emails; video surveillance; hospital assignment and rotation schedules; call detail records and a phone audio recording. The Government has also produced reports of interviews with witnesses.

On September 5, 2024, the day before pretrial motions were due, the defendant sent the Government a letter requesting various categories of "discovery" materials. The Government is in the process of considering the requests. However, on preliminary review, it appears that most of the materials requested have either already been produced; do not exist; are not in the Government's possession; or are materials to which the defendant is not entitled.

## LEGAL STANDARD

A. HIPAA

HIPAA provides criminal penalties for the wrongful obtaining or disclosure of individually identifiable health information ("IIHI"). Pursuant to 42 U.S.C. § 1320d-6(a),

> A person who knowingly and in violation of this part . . .
>
> (2) obtains individually identifiable health information relating to an individual; or
> (3) discloses individually identifiable health information to another person,
> shall be punished as provided in subsection (b). For purposes of the previous sentence, a person (including an employee or other individual) shall be considered to have obtained or disclosed individually identifiable health information in violation of this part if the information is maintained by a covered entity (as defined in the HIPAA privacy regulation described in section 1320d-9(b)(3) of this title) [2] and the individual obtained or disclosed such information without authorization.

As relevant here, HIPAA sets forth different penalties "if the offense is committed under false

---

[2] HIPAA's privacy regulation defines a "covered entity" as "[a] health care provider who transmits any health information in electronic form in connection with a transaction covered by this subchaper." 45 C.F.R. § 160.103. A "transaction" means the "transmission of information between two parties to carry out financial or administrative activities related to health care." *Id.*

3

pretenses," 42 U.S.C. § 1320d-6(b)(2), or "if the offense is committed with intent to sell, transfer, or use individually identifiable health information for . . . malicious harm," *id.* § 1320d-6(b)(3).

HIPAA's privacy regulation defines "individually identifiable health information" as:

information that is a subset of health information, including demographic information collected from an individual, and:
    (1) Is created by a health care provider, health plan, employer, or health clearinghouse; and
    (2) Relates to the past, present, or future physical or mental health or condition of an individual; or the past, present, or future payment for the provision of health care to an individual; and
    (i) That identifies the individual; or
    (ii) With respect to which there is a reasonable basis to believe the information can be used to identify the individual.

45 C.F.R. § 160.103.

HIPAA requires that any "covered entity" under the Act obtain authorization before using or disclosing a patient's IIHI, 45 C.F.R. §§ 160.103, 164.508, unless certain exceptions apply, 42 C.F.R. § 164.512. The regulations also set forth requirements for proper "de-identification of protected health information,"[3] 45 C.F.R. § 164.514, which includes the removal of, *inter alia*, names and dates "directly related to an individual," including admission date, *id.* § 164.514(b)(2)(i).

HIPAA regulations include a whistleblower provision that allows disclosure of HIPAA-protected information under certain specific circumstances:

    (j) *Standard: Disclosures by whistleblowers and workforce member crime victims*.

---

[3] The HIPAA regulations define "protected health information" as "individually identifiable health information" transmitted or maintained by or in electronic media or other form. 45 C.F.R. § 160.103.

4

> (1) *Disclosures by whistleblowers.* A covered entity is not considered to have violated the requirements of this subpart if a member of its workforce or a business associate discloses protected health information, provided that:
>     (i) The workforce member or business associate believes in good faith that the covered entity has engaged in conduct that is unlawful or otherwise violates professional or clinical standards, or that the care, services, or conditions provided by the covered entity potentially endangers one or more patients . . . .; and
>     (ii) The disclosure is to:
>     (A) A health oversight agency or public health authority authorized by law to investigate or otherwise oversee the relevant conduct or conditions of the covered entity or to an appropriate health care accreditation organization for the purpose of reporting the allegation of failure to meeting professional standards or misconduct by the covered entity; or
>     (B) An attorney retained by or on behalf of the workforce member or business associate for the purpose of determining the legal options of the workforce member or business associate with regard to the conduct described in paragraph (j)(1)(i) of this section.

45 C.F.R. § 164.502(j).

Under the plain language of the statute, a defendant can be convicted of violating HIPAA if he obtains *or* discloses individually identifiable health information without authorization. *See* 42 U.S.C. § 1320d-6(a)(2) and (3). Thus, "HIPAA does not simply prohibit public disclosure of protected information," *Rutherford v. Palo Verde Health Care District*, No. 13-1247, 2014 WL 12632901, at *12 (C.D. Cal. Apr. 17, 2014) (citing 45 C.F.R. § 164.402 ("Breach means the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information.")), it also prohibits the unauthorized obtaining of that information even if it is not disclosed. *See United States v. Zhou*, 678 F.3d 1110, 1112-13 (9th Cir. 2012) (affirming HIPAA conviction of former employee who accessed patient records in days after employment terminated).

5

B. Bill of Particulars

"The sufficiency of an indictment is judged by whether (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, without any uncertainty or ambiguity, and (3) the charge is specific enough to protect the defendant against subsequent prosecution for the same offense." *United States v. Lavergne,* 805 F.2d 517, 521 (5th Cir. 1986). Thus, while a defendant is "entitled to a plain concise statement of essential facts constituting the offenses charged, the indictment need not provide [him] with the evidentiary details by which the government plans to establish [his] guilt." *Id.*

Federal Rule of Criminal Procedure 7(f) permits a defendant to move for a bill of particulars "before or within 14 days after arraignment or at a later time if the court permits." It is well established that "[t]he purpose of a bill of particulars is to inform an accused of the charge with sufficient precision to reduce trial surprise, to enable adequate defense preparation, and critically, by the fleshing out of the charges to illuminate the dimensions of jeopardy." *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978) (citations omitted); *United States v. Moody*, 923 F.2d 341, 351 (5th Cir. 1991) ("A bill of particulars is not required if a defendant is otherwise provided, *inter alia*, with sufficient information to enable him to prepare his defense and avoid surprise." (citations omitted)).

A defendant has "no right to a bill of particulars." *United States v. Burgin*, 621 F.2d 1352, 1358–59 (5th Cir. 1980). Rather, "the decision on the motion lies within the discretion of the court," *id.*, which "is afforded substantial discretion" in making that determination, *Davis*, 582 F.2d at 951. In exercising that discretion, the trial court examines whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the

6

charges against him to enable him to prepare for trial and avoid double jeopardy in future prosecutions. *See Moody*, 923 F.2d at 351. If "the information requested is provided to the defendant in some other form" outside of the indictment, a bill of particulars is not required. *United States v. Marrero*, 904 F.2d 251, 258 (5th Cir. 1990) (citation omitted); *see also United States v. Kirkham,* 129 F. App'x 61, 72 (5th Cir. Apr. 11, 2005) (concluding that the "voluminous discovery" provided by the government "obviated the need for a bill of particulars").

A bill of particulars is not designed to compel the United States to provide a detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial. *Burgin*, 621 F.2d at 1359; *United States v. Gordon*, 780 F.2d 1165, 1171–72 (5th Cir. 1986) ("The indictment need not provide [the defendant] with the evidentiary details by which the government plans to establish his guilt."). "[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars." *Davis*, 582 F.2d at 951; *see also United States v. Castro-Flores*, No. H-12-614-4, 2013 WL 6858523, at *2 (S.D. Tex. Dec. 30, 2013) (concluding that "where the government has provided the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary" (citation omitted)). As the Fifth Circuit has held, "[a] bill of particulars is not appropriate if used for the purpose of obtaining a detailed disclosure of the government's evidence prior to trial." *United States v. Hamlin*, 68 F.3d 469, 469 (5th Cir. 1995).

## ARGUMENT

The Court should deny the defendant's motion for a bill of particulars because the Indictment in this case is sufficient to provide notice of the charges against him and the ability to

prepare his defense.

Here, the Indictment provides far more than a "plain concise statement of essential facts constituting the offenses charged." *United States v. Lavergne,* 805 F.2d at 521; *see* Fed. R. Crim. P. 7(c)(1) ("The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged").  Not only does the Indictment apprise the defendant of the charges against him, but it goes even further than necessary, setting forth, among other things, a detailed description of approximately when, how, and why the defendant obtained HIPAA-protected information, what information he obtained, what he did with that information, and how he harmed TCH, its physicians and patients. (*See* Ind. ¶¶ 1-19). In addition, all four counts in the Indictment set forth the approximate date range ("on or about September 22 to on or about February 2024") of the offense, the citation to the precise sections of Title 42 the defendant is alleged to have violated, and either a "to wit" clause or a chart giving even more details about what records the defendant obtained or disclosed. (Ind. p. 4-5).  For Counts Two through Four, a chart provides a narrower date range and information about the information obtained. (Ind. p. 5).

In addition to the Indictment, the Government has also provided the defendant with timely and voluminous discovery, as described above, and early production of reports of interviews with witnesses.  On June 26, 2024, the Government met in person with defense counsel to go over the Indictment and the discovery in the case, and answer any questions.  In sum, the Government has provided the defendant with all the information and details necessary—and then some—to prepare his defense.

In the Motion, the defendant specifically requests the "manner and means by which and

8

the specific dates within the broadly alleged timeframe" on which the defendant is alleged to have committed Counts One through Four. (Mot. Request Nos. 1, 2.). The requested information is not legally required. *See, e.g.*, *United States v. Giles*, 756 F.2d 1085, 1086–87 (5th Cir. 1985) (holding indictment was sufficient when it charged the defendant with conspiring to distribute drugs "on or about April, 1981, and continuing through August, 1982, in Harris County, in the Southern District of Mississippi, and elsewhere."); *United States v. Quiroz*, No. 421CR00334ALMCAN2, 2022 WL 3223983, at *4 (E.D. Tex. July 15, 2022) ("[T]he precise date/time of the act . . . need not be alleged in the charging documents.") (denying request for bill of particulars where indictment alleged offense occurred "sometime in or about 2019 and continuously thereafter up to and including the date of th[e] [indictment]).

Regardless, even if the Indictment were insufficient, the defendant has already been provided the requested information through the production of discovery and the more detailed description of the facts set forth in the Government's pretrial motions (Dkt. 33, p. 2-7). For example, the Government has indicated that: (1) Count One comprises the defendant's conduct with regard to the pediatric transplant patients whose files he obtained under false pretenses, and the proof at trial will demonstrate that he obtained the individually identifiable health information for these patients on April 24, 2023 and May 9, 2023; and (2) Counts Two through Four relate to patients whose information the defendant obtained and then leaked to Person1; and the proof at trial the proof at trial will show that the defendant obtained the individually identifiable information for these patients between May 9, 2023 and May 14, 2023. Requests No. 1 and 2 are therefore moot.

The defendant also requests information about how (the "means and methods" by which)

9

his obtaining or disclosing HIPAA-protected information was with intent to cause malicious harm. (Mot. Request Nos. 3, 4, 7). Again, the Indictment already furnishes this information for the defendant. For example, paragraph 19 of the Indictment alleges that "[i]n furtherance of his malicious intent, HAIM obtained unauthorized HIPAA protected information and intentionally contacted a media outlet to grossly mischaracterize TCH's medical procedures in order to damage the reputation of TCH and its physicians." To the extent that the defendant is seeking further information about what evidence the Government will use to prove the defendant's intent, this amounts to an improper attempt to have the Government set forth its legal theories and a detailed evidentiary disclosure. *See Gordon*, 780 F.2d at 1171–72; *see also United States v. McMillan*, No. 23 Cr. 309, 2024 WL 3564854, at *6 (N.D. Ga., July 3, 2024) (denying bill of particulars requesting "an explanation about how [certain] letters [mentioned in the indictment] either furthered or were material to the insurance fraud scheme") ("[The defendant] is not entitled to a pretrial exposition of the government's legal theories upon which it intends to rely at trial." (internal quotation marks and citations omitted)). The defendant already has discovery and his counsel had the opportunity to meet and discuss the matter with the Government. Nothing further is required.

The remainder of the defendant's requests (Nos. 5, 6, 8-10) seek additional details about what amounts to surplusage in the Indictment, and amount to an inappropriate attempt to obtain a detailed disclosure of Government's evidence prior to trial via a bill of particulars. "[I]t is an axiom of criminal law that the prosecution's burden is to prove the essential elements of the crime, not all the facts that may be stated within an indictment." *United States v. Santos*, No. CR 18-585 (MAS), 2020 WL 5366384, at *1 (D.N.J. Sept. 8, 2020) (citing *Richardson v. United*

*States*, 526 U.S. 813, 817 (1999)); *see United States v. Buchanan*, 544 F.2d 1322, 1324 n.2 (5th Cir. 1977) ("The Government need not prove all the facts charged in the indictment. It need only prove enough of them to satisfy the essential elements of the crime."); *United States v. Tykarsky*, 446 F.3d 458, 474 (3d Cir. 2006) ("[A] defendant's right to be tried on the charges set forth in the indictment is not impaired where the indictment alleges more acts than are necessary for conviction."); *McMillan*, 2024 WL 3564854, at *6 (denying bill of particulars as to government's loss calculation where loss amount was not an element of the charged offense); *United States v. Shteyman*, No. 10 Cr. 347 SJ, 2011 WL 2006291, at *4 (E.D.N.Y. May 23, 2011) (same); *United States v. Pirk*, 267 F. Supp. 3d 406, 442 (W.D.N.Y. 2017) (denying bill of particulars requesting nature, weight, and volume of controlled substances because these were not elements of the offense); *United States v. Lorenzana-Cordon*, 130 F. Supp. 3d 172, 175 (D.D.C. 2015) (denying bill of particulars requesting overt acts because overt acts not an element of conspiracy offense charged). To prove the defendant violated HIPAA, the Government is not required to show (a) what concerns the defendant did not report to supervisors, Baylor's anonymous hotline, or CPS; (b) what the defendant's "personal agenda" was; or (c) how he "grossly mischaracterized" TCH's medical procedures or what those procedures were. Indeed, these details are already above and beyond what the Government is required to put in its Indictment to place the defendant on notice of the charges against him and give him enough information to conduct his own investigation and prepare for trial. Although the Government may decide to offer evidence of each of these facts as proof of the defendant's intent or to rebut arguments that he was only concerned about patients' welfare, the defendant is not entitled to a "detailed exposition of its evidence," *Burgin*, 621 F.2d at 1359, in a bill of particulars.

## CONCLUSION

**WHEREFORE**, for the reasons outlined and described above, the Government respectfully requests that the defendant's motion for a bill of particulars be denied in its entirety.

Date:   September 6, 2024                Respectfully submitted,

                                                      ALAMDAR HAMDANI
                                                      United States Attorney, Southern District of Texas

By:    *s/ Jessica Feinstein*_____
       Tina Ansari
       Tyler S. White
       Jessica Feinstein
       Assistant United States Attorneys
       1000 Louisiana Street, 25th Floor
       Houston, Texas 77002
       Tel.: (713)-567-9547; FAX: (713) 718-3303
       *Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2024, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all defense counsel of record.

                                                /s/ *Jessica Feinstein*
                                                Jessica Feinstein
                                                Assistant United States Attorney