UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| | § | Criminal No. 24-CR-00298 |
| V. | § § | |
| EITHAN HAIM | § § | |

## DEFENDANT'S MOTION FOR GRAND JURY MATERIAL

The defendant, Dr. Eithan Haim, respectfully requests that the Court order the government to turn over all grand jury testimony and evidence relevant to the charges of committing the alleged HIPAA violations under false pretenses. The discovery, the government's conduct, and the superseding indictment raise a strong inference that the government knowingly sponsored false information before the grand jury and that the false information influenced the grand jury's decision to return the indictments on the false pretenses charges.

## BACKGROUND

In the original indictment, Dkt. No. 1, the government charged one count of violating HIPAA under false pretenses. The allegations in the indictment were built around the idea that Dr. Haim had no reason whatsoever to have access to TCH's electronic medical records (EMR) system after finishing a surgical rotation at TCH in January 2021 because he had no patients there. The specific allegations included that after Dr. Haim completed his rotation at TCH in January 2021, he "did not return

to TCH for any additional pediatric rotations or medical care" (¶ 9); in April 2023, Dr. Haim sought re-activation of his TCH login to access "pediatric patients not under his care" but emailed TCH "claiming urgency for adult care services . . ." (¶ 11); Dr. Haim "did not treat or access any adult care patients during this time period at TCH" (¶ 12); and Dr. Haim claimed "under the false pretenses that he needed to urgently attend to adult care services" (¶ 15). Thus, if Dr. Haim did have patients at TCH during that timeframe, especially in April 2023, these allegations would be mendacious, and the false pretenses charge would fall apart.

The government acknowledged on September 13, 2024, that TCH had found records of care Dr. Haim provided to TCH's patients "after Haim's residency rotation at TCH." Dkt. No. 39-1. Specifically, TCH found records of adult and pediatric patients that Dr. Haim had treated at TCH throughout 2021,[1] long past his last official rotation at TCH, and a record of an adult patient at TCH who was operated on by Dr. Haim on April 14, 2023. TCH has produced these records to the government, which in turn provided them in discovery, and the records confirm that Dr. Haim was involved in these patients' care. The government further stated two days later in an email to Dr. Haim's counsel that the government had "requested that

---

[1] The 2021 records matter because Dr. Haim was on rotations at Baylor St. Luke's Medical Center during most of those yet covering and treating TCH patients. He was rotating at that same hospital in April and May 2023 during all the events relevant to the charges. The difference was that as chief resident in 2023, he was no longer merely tasked with cross-covering TCH—he was also responsible for ensuring that more junior residents were assigned to cover TCH continually.

TCH produce to the Government, as soon as possible, *all records pertaining to Eithan Haim* after the end of his residency rotation in [January] 2021, including but not limited to EPIC records and badge swipes at TCH facilities." Dkt. No. 39-2 (emphasis added). The government has neither notified the defense that it has dropped this request from TCH nor completed such a collection from TCH.

At the September 26th hearing on Dr. Haim's renewed motion for a continuance, counsel for Dr. Haim further revealed that the government should have known about the procedures Dr. Haim performed past his last full rotation at TCH in January 2021 because 1) the government in discovery had provided an audit trail from Dr. Haim's access to TCH's EMR system showing that he made entries for TCH patients past the rotation ending date and 2) TCH had told the government as part of a Health and Human Services Office of Civil Rights (HHS OCR) investigation that TCH considered Dr. Haim to have appropriately had access to its EMR system through the relevant times in 2023 because he was continuing to cover patients at TCH even while rotating at other hospitals. Tr. at 7-9. This written response from TCH to HHS OCR was contained within the government's discovery to Dr. Haim's counsel.

The government has now obtained a superseding indictment. Dkt. No. 76. The primary changes include deleting all of the specific allegations noted above that were contradicted by the records TCH discovered and the other evidence in the

government's possession. The deletion of those supporting allegations leaves the sole allegation regarding false pretenses unsupported: "HAIM contacted TCH numerous times under the false pretense that he needed access to the electronic records system for the treatment of patients under his care." *Id.* ¶ 9. Nevertheless, the government added false pretenses to all of the charges including counts 2–4. *Id.* at 4–5.

## LEGAL STANDARD

While grand jury materials are ordinarily kept secret, a court may authorize their disclosure "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." Fed. R. Crim. P. 6(e)(3)(E)(ii). "The burden is on the party seeking disclosure to show that 'a particularized need' exists for the materials that outweighs the policy of secrecy." *United States v. Shows Urquidi*, 71 F.4th 357, 366 (5th Cir. 2023) (quoting *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993)). The party seeking the material must demonstrate that "(1) the material he seeks is needed to avoid a possible injustice, (2) the need for disclosure is greater than the need for continued secrecy, and (3) his request is structured to cover only material so needed." *Id.* (cleaned up).

One situation that qualifies for disclosure of grand jury materials under this standard is when a defendant claims that the prosecution put false information before

the grand jury. The court should ask "two questions: (1) did the government 'knowingly sponsor' false information before the grand jury and (2) was that information material, that is, was the information 'capable' of influencing the grand jury's decision." *Id.* (quoting *United States v. Cessa*, 861 F.3d 121, 142 (5th Cir. 2017)). Where the government has made material misleading statements to the grand jury, the defense should be permitted to review the relevant grand jury material. *See United States v. Naegele*, 474 F. Supp. 2d 9, 11 (D.D.C. 2007) (granting motion to review grand jury material when government agent omitted that government lacked documentary evidence of false or fraudulent statement at time of indictment).

## ARGUMENT

The facts here merit the disclosure of grand jury materials showing what the government put before the grand jury to justify its allegation and conclusion that Dr. Haim requested and obtained access to TCH's electronic medical records system under false pretenses.

The government has repeatedly represented to counsel for the defendant that it has provided full discovery of its case file of the evidence that it obtained during its investigation and the materials it intends to use at trial. *See* Dkt. No. 34 at 8–9; Tr. at 16. That discovery eventually contained evidence from TCH's records, including patient files showing that Dr. Haim had a surgery at TCH as late as April

14, 2023, *see* Dkt. No. 39-1, and TCH's statement to HHS OCR that Dr. Haim "rotated" at TCH throughout 2022 and 2023 (including in April 2023) by covering TCH patients while assigned to other hospitals, Ex A at 4.[2] Discovery included emails between Dr. Haim and Linda Mayfield, the TCH project analyst handling resident access to TCH's EMR system, by which Dr. Haim requested and obtained access. And discovery included an interview, in the form of an FBI "302," in which Ms. Mayfield confirmed that Dr. Haim might see adult patients and that he visited her office on April 14, 2023 (the same morning we know from patient records that he had a surgery at TCH) to request access. Ex. B. None of this material supports the allegation that when he requested access to TCH's EMR system, including for adult patients, that it was a lie or that he obtained access by false pretenses.

Any testimony that the government may have used to support its false pretenses allegation(s) and charges was premised on Dr. Haim never going back to TCH. The witness that the government told defense counsel that it intended to rely upon at trial to explain all of this was the Surgeon in Chief at TCH. Ex. C. In the "302" for his interview, that witness acknowledged that Dr. Haim was on a backup list to see adult patients at TCH, but he could not "recall an incident during his tenure at TCH where a resident was called to provide backup care services to an adult

---

[2] The defense is submitting these exhibits under seal out of respect for the government's providing discovery and to minimize the effects on any trial.

patient at TCH." *Id.* It appears that this testimony was the primary source of the following statement in the government's pretrial motion:

> During the relevant timeframe, the defendant was on a list of physicians available for adult patients at TCH's Women's Pavilion in case of emergencies like natural disasters. However, TCH witnesses will testify that this backup list was very rarely used. And the defendant did not actually treat any adult patients at TCH in 2022 and 2023.

Dkt. No. 33 at 4 n.2.

Further, the government clearly relied on the Surgeon in Chief's conclusions when Dr. Haim's counsel was told in a June 26, 2024 meeting at the U.S. Attorney's Office that, during the relevant time period, the government will show that Dr. Haim had no adult patients to see, that he never treated adult patients, and that he would only be called back to TCH or the Women's Pavilion "if an asteroid hit the Gulf of Mexico and they ran out of surgeons."

Everyone now knows that such testimony and the above statements are false. Dr. Haim himself treated numerous patients at TCH when on rotations at other hospitals, consistent with TCH's representations to HHS OCR. The representations were false when the government first indicted Dr. Haim, and the government should have known that. Yet the government has not only kept the same conclusory assertion about false pretenses in the superseding indictment, it has also added the same charge to all counts. The government cannot use the testimony indicating that Dr. Haim's access requests were under false pretenses because the premise of that

testimony, that he never had adult patients at TCH, was untrue. If it did, that would be "knowingly sponsoring" false information before the grand jury. And that false information would be obviously "capable" of influencing the grand jury's decision to charge Dr. Haim with committing HIPAA violations under false pretenses. And once again, the evidence that Dr. Haim treated patients after January 2021 was included in the government's initial tranche of discovery. Any statement to a grand jury that Dr. Haim did not treat patients after January 2021 is provably false with the government's own discovery and is also "capable" of influencing the grand jury's decision.

Yet there is simply no other way that the government could reasonably have gone about demonstrating false pretenses. The new evidence only further confirms that when he sought and obtained access in April 2023, he was already operating on an adult patient and needed access to TCH's EMR system as any physician treating patients there. There is no lie in any of his requests for access or communications with TCH. This shows that grounds may exist to dismiss the superseding indictment.

Accordingly, Dr. Haim seeks all of the testimony and evidence that the government submitted to the grand jury relevant to obtaining an indictment on the false pretenses charges for the original and superseding indictments. This is necessary to avoid the injustice of his indictment being premised on false information knowingly sponsored by the government. The case law confirms that

the need for this information is greater than the need for continued secrecy. And the information requested is no more than required to evaluate and demonstrate the prosecution's misconduct and justify dismissing the indictment.

## CONCLUSION

The Court should order that the government provide all testimony and evidence that the government submitted to the grand jury relevant to obtaining the original and superseding indictments on the false pretenses charges.

Counsel for Dr. Haim has conferred by email with counsel for the government. The government opposes the relief requested herein.

Dated: October 18, 2024

Respectfully submitted,

/s/ Ryan Patrick

| | |
|---|---|
| Marcella C. Burke<br>TX State Bar 24080734<br>SDTX No. 1692341<br>Burke Law Group, PLLC<br>1000 Main St., Suite 2300<br>Houston, TX 77002<br>Tel: 832.987.2214<br>Fax: 832.793.0045<br>marcella@burkegroup.law | Ryan Patrick<br>Attorney-in-Charge<br>TX State Bar 24049274<br>SDTX No. 3006419<br>Haynes and Boone LLP<br>1221 McKinney Street, Suite 4000<br>Houston, Texas 77010<br>Tel: 713.547.2000<br>Fax: 713.547.2600<br>ryan.patrick@haynesboone.com |
| Jeffrey A. Hall<br>VA State Bar 82175<br>SDTX No. 3885025<br>Burke Law Group, PLLC<br>2001 L. Street N.W., Suite 500<br>Washington, D.C. 20036<br>Tel: 832.968.7564<br>Fax: 832.793.0045<br>jeff@burkegroup.law | Mark D. Lytle<br>DC Bar 1765392<br>SDTX No. 3884197<br>Nixon Peabody LLP<br>799 9th Street NW, Suite 500<br>Washington, D.C. 20001<br>Tel: 202.585.8435<br>Fax: 202.585.8080<br>mlytle@nixonpeabody.com |

**ATTORNEYS FOR DEFENDANT EITHAN DAVID HAIM**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing document has been filed and served on October 18, 2024, using the CM/ECF system, which will send notification of such filing to all counsel of record. The attachments were filed under seal and also delivered to via email to the government.

/s/ *Ryan Patrick*
Ryan Patrick

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 18, 2024, counsel for Dr. Haim, Ryan Patrick, conferred via email with counsel for the government Tina Ansari and Jessica Feintstein who confirmed that the relief requested herein was opposed.

/s/ *Ryan Patrick*
Ryan Patrick