**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| | § | |
| v. | § | Criminal Action No: 4:24-cr-00298 |
| | § | |
| EITHAN DAVID HAIM | § | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR GRAND JURY MATERIALS

TO THE HONORABLE DAVID HITTNER:

The Government respectfully submits this memorandum in opposition to defendant Eithan David Haim's motion for disclosure of grand jury materials (Dkt. No. 84, "Def. Mot."). The defendant's motion continues his strategy of baselessly attacking the Government. For the reasons set forth below, the defendant's request is both meritless and moot, and the defendant has failed to meet the heavy burden required to outweigh the policy of grand jury secrecy.

### I.    FACTUAL BACKGROUND

On May 29, 2024, a grand jury in the Southern District of Texas returned a four-count indictment charging the defendant with criminal violations of HIPAA (the "Original Indictment"). Count One charged that from on or about September 2022 through on or about February 2024, the defendant knowingly and without

1

authorization obtained individually identifiable health information under false pretenses, specifically, electronic medical records maintained by Texas Children's Hospital ("TCH") containing the individually identifiable health information of four pediatric patients, in violation of 42 U.S.C. §§ 1320d-6(a)(2) and (b)(2). Counts Two through Four charged that between on or about September 2022 and February 2024, the defendant knowingly and without authorization obtained and/or wrongfully disclosed the individually identifying information of three pediatric patients, with intent to cause malicious harm to TCH's physicians and patients, in violation of 42 U.S.C. §§ 1320d-6(a)(2) and (b)(3).

On September 12, 2024, TCH informed the Government for the first time that, in summary, "notes" in TCH's electronic medical records system ("EPIC") indicated the defendant was present at TCH in 2021 for adult and pediatric patient procedures after the end of his pediatric surgery rotation, and that he was present for a single adult procedure at TCH on April 14, 2023.  The Government disclosed that information to the defendant on September 13, 2024, and provided related records from TCH thereafter.

On October 10, 2024, the grand jury returned a superseding indictment (the "Superseding Indictment"), which, as relevant here:  (1) narrowed the timeframe of the charges in Counts One through Four to January 2023 through May 2023; (2)

removed irrelevant references to the defendant's interactions with pediatric patients after January 2021 (Original Ind. ¶ 9) and omitted language that indicated there were no adult patients under the defendant's care in 2023 (Original Ind. ¶ 12, 15); and (3) omitted the wrongful disclosure allegation in Counts Two through Four and added false pretenses to those charges.

## II.   LEGAL STANDARD

"The proper functioning of the grand jury system depends upon the secrecy of the grand jury proceedings." *United States v. Miramontez*, 995 F.2d 56, 59 (5th Cir. 1993) (quoting *Douglas Oil v. Petrol Stops Northwest*, 411 U.S. 211 (1979)). As such, "[p]arties seeking grand jury transcripts under Rule 6(e) must show (1) that the material they seek is needed to avoid a possible injustice . . . , (2) that the need for disclosure is greater than then need for continued secrecy, and (3) that their request is structured to only cover material so needed." *In re Grand Jury Testimony*, 832 F.2d 60, 62-63 (5th Cir. 1987).   This showing "must be made even when the grand jury whose transcripts are sought has concluded its operations." *Miramontez*, 995 F.2d at 59.

The party seeking disclosure bears the burden of showing a particularized and compelling need for the materials that outweighs the policy of secrecy. *See id.*; *see also United States v. Arshad*, 325 F. Supp. 3d 695, 702 & n.44 (E.D. La. 2018)

3

(citing cases). "Caselaw has uniformly held that the burden to obtain a transcript of grand jury proceedings is a high one." *United States v. Cheng*, No. 4:20 Cr. 455, 2022 WL 112027, at *1 (S.D.T.X. Jan. 12, 2022). Mere speculation is inadequate to show particularized need for disclosure of grand jury transcripts. *In re Grand Jury 95-1,* 118 F.3d 1433, 1437 (5th Cir.1997) ("The request must amount to more than a request for authorization to engage in a fishing expedition."); *see, e.g.*, *Arshad*, 325 F. Supp. 3d at 703.

"[A] court may authorize the disclosure of grand jury materials 'at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury.'" *United States v. Shows Urquidi*, 71 F.4th 357, 366 (5th Cir. 2023) (quoting Fed. R. Crim. P. 6(e)(3)(E)(ii)) (affirming denial of access to grand jury transcripts where defendant argued that indictment incorrectly named him and therefore government may have confused him with another person). However, the Fifth Circuit has "refused to adopt the proposition that, absent perjury or government misconduct, an indictment is flawed simply because it is based on testimony that may later prove to be questionable." *Id.* (internal quotation marks and citations omitted). Rather, "[t]he grounds for dismissing an indictment because of prosecutorial misconduct are extremely limited." *United States v. Patterson*, No. CR 19-27, 2019 WL 2289499,

4

*3 (E.D. La. May 28, 2019).

"When a defendant claims that the prosecution put false information before the grand jury, [the court should] ask two questions (1) did the government knowingly sponsor false information before the grand jury and (2) was that information material, that is, was the information capable of influencing the grand jury's decision." *Shows Urquidi*, 71 F.4th at 366 (internal quotation marks and citations omitted).  Ultimately, "Government misconduct does not mandate dismissal of an indictment unless it is so outrageous that it violates the principle of fundamental fairness under the due process clause of the Fifth Amendment.  Such a violation will only be found only in the rarest circumstances." *United States v. Mauskar*, 557 F. 3d 219, 231-32 (5th Cir. 2009) (internal quotation marks and citations omitted).

## III.   ARGUMENT

The defendant requests the grand jury transcripts for the Original Indictment and Superseding Indictment on the grounds that the Government "should have known" (Def. Mot. at 2, 7) that the information it sponsored before the grand jury was false.  The basis for this assertion is that, as the Government learned during preparation for trial in September 2024, the defendant saw TCH patients in 2021 after his rotation there ended, and he was present for an adult procedure at TCH on

5

April 14, 2023.  (Def. Mot. at 2).

The Court should deny the motion because: (1) the request is moot since the Superseding Indictment omits the allegedly objectionable allegations and the defendant cannot articulate any "potential injustice," *In re Grand Jury Testimony*, 832 F.2d at 62-63; (2) in any event, the defendant has not met his burden of showing with particularity that the government knowingly sponsored false information before the original grand jury; and (3) with regard to the Superseding Indictment transcript, the defendant's unsupported speculation about the adequacy of the evidence fails to articulate particularized need for disclosure.

A.  The Defendant's Motion is Moot

The Court should deny the defendant's request as moot. The Superseding Indictment is now the operative charging instrument and he has not articulated what possible injustice might flow from the Original Indictment.

The defendant has not, and cannot, show that the grand jury transcripts are "needed to avoid a possible injustice." *In re Grand Jury Testimony*, 832 F.2d at 62-63. This is because the allegedly inaccurate allegations in paragraphs 9, 11, 12, and 15 of the Original Indictment (Def. Mot. at 1-2) were removed from the Superseding Indictment, thereby rectifying any potential impropriety.

The Fifth Circuit's decision in *United States v. Madrid*, 610 F. App'x 359 (5th

Cir. 2015) is instructive here.  In *Madrid*, the defendant sought disclosure of grand jury transcripts on the basis that the government "had reason to know" before it went to grand jury that certain of the facts alleged in the indictment were false. *Id.* at 372. Before the district court ruled on the defendant's motion, the grand jury returned a superseding indictment that omitted the incorrect allegations.  The district court then denied the motion as moot, and the Circuit affirmed the decision. *Id.* at 372-74.

Other courts have reached the same conclusion when superseding indictments corrected inaccuracies. For example, in *United States v. Waguespack*, No. 16-58 JWD-RLB, 2017WL1050580 (M.D. La. Mar. 20, 2017), *aff'd* 935 F.3d 322 (5th Cir. 2019), the district court declined to order disclosure of grand jury materials where the superseding indictment "rectifie[d] any potential injustice that the Defendant may have faced," and found that "[q]uite simply, the matter now seems moot." Moreover, the district court noted that, as for the superseding indictment, "[T]he Defendant cannot prove that, but for the lie [to the original grand jury], he would not have been indicted on the new superseding Count One." *Id. See also United States v. Kight*, No. 1:16-CR-00099-AT-LTW, 2020 WL 2050665, at *2 (N.D. Ga. Mar. 16, 2020); *United States v. Baer*, No. 21 Cr. 520-JNP, 2023WL3022495 (D. Utah Apr. 20, 2023) (declining to order disclosure of grand jury transcripts where defendant alleged that original indictment contained legal error and government

7

allegedly did not present grand jury with exculpatory information).

The defendant does not argue that any taint in timeframe flowed to the Superseding Indictment from the Original Indictment. *See Kight*, 2020 WL 2050665, at *2 ("[A]n error in the initial indictment does not lead to the presumption that subsequent indictments are also flawed, or that the entire grand jury process has been undermined."). Instead, as discussed in Part C below, he merely speculates about what evidence and theories the Government relied on in grand jury, and then argues that the evidence was insufficient. But this does not meet his burden. Since the defendant has not articulated a possible injustice that could flow from a prior version of the indictment, the Court should dismiss the motion.

### B. The Government Did Not Knowingly Present False Information to the Original Grand Jury

In addition to being moot, the defendant's motion is also baseless. The defendant has failed to present any particularized facts showing the Government knowingly presented false information to the original grand jury in May 2024.

The Superseding Indictment merely amended allegations in light of new information and narrowed the focus for trial.  It is extremely common for the Government to learn new facts, or to understand evidence in a new light, during preparation for trial. *Cf. United States v. Madrid*, 610 F. App'x 359 (5th Cir. 2015) ("[T]he mere fact that the original indictment may have erroneously set forth charges

that the government would have been unable to prove—which required the corrections made by the superseding indictment—does not necessarily demonstrate perjury."); *United States v. Sam Goody, Inc.*, 506 F. Supp. 380, 384 (E.D.N.Y. 1981) ("Superseding indictments to cure pleading defects or inartfully drafted charges are not only commonplace but have been held to be perfectly proper, not abusive and not violative of due process."). That does not entitle the defendant to puncture grand jury secrecy. Indeed, the "government's conduct" (Def. Mot. at 1) completely undermines this argument. If the Government knowingly lied to the grand jury, it doesn't follow that the Government would have then made the very disclosures that would otherwise expose the supposed lie. Rather, such disclosures demonstrate that the Government is acting in good faith.

Since the defendant cannot show that the Government knowingly sponsored false information, he instead argues that the Government "should have known" (Def. Mot. at 2, 7) that allegations in the Original Indictment were inaccurate. In particular, he points to three sources of information the Government had in its possession prior to the original grand jury: (1) records showing the defendant accessed EPIC on dates in 2021 after his pediatric surgery rotation at TCH ended;[1]

---

[1] These records are different from the EPIC "notes" that the Government learned about in September 2024, and do not reflect the information in the notes.

(2) a report of an FBI interview with TCH administrator Linda Mayfield; and (3) TCH's response to the Department of Health and Human Service's Office of Civil Rights (the "OCR Response"). (Def. Mot. at 3, 5-6).

However, as described below, none of this information alerted or should have alerted the Government to supposed inaccuracies.

First, the 2021 EPIC access records do not actually negate any of the allegations in the Original Indictment. The charges in the Original Indictment focused on the defendant's access of pediatric patient records during the time-period of September 2022 through May 2023, not 2021. A single paragraph (Paragraph 9) in the speaking portion of the Original Indictment did address 2021, but only as background for the defendant's treatment of pediatric patients after his TCH pediatric surgery rotation ended in January 2021. It is undisputed that the defendant's last pediatric rotation ended in January 2021. Moreover, the defendant's access of EPIC records in 2021 is irrelevant to the rest of the allegations in the Original Indictment that the defendant suggests were mistaken (¶¶ 11, 12, 15), which pertain to April 2023 (¶12) and the defendant's requests to access EPIC in 2022 and 2023 (¶¶ 11,15).

Second, TCH administrator Linda Mayfield told the Government that the defendant, as a fifth-year resident in 2023, "may" still see patients at the TCH

Women's Pavilion (*i.e.*, adult patients) (*see* Def. Mot. Ex. B).  This aligns with the allegations in the Original Indictment, which involve pediatric patients not adult patients.  And Ms. Mayfield never said the defendant did in fact see adult patients. *See id.* ("MAYFIELD had no way to know for certain if HAIM needed to see patients").

And third, the OCR Response, a letter prepared by outside counsel for TCH in response to OCR's request for information, also does not support the defendant's motion.[2] Contrary to what the defendant claims, the OCR Response *does not say* that "TCH considered Dr. Haim to have appropriately had access to its EMR system through the relevant times in 2023 because he was continuing to cover patients at TCH even while rotating at other hospitals." (Def. Mot. at 3). Rather, that is the defendant's skewed and selective summary of the OCR Response.  While the OCR Response states that the defendant had "coverage" at the Pavilion for Women from April 12, 2023 through June 23, 2023 (Def. Mot. Ex. A), the Government understood from a TCH witness—as the defense acknowledges (Def. Mot. at 6-7)—that it was extremely rare for doctors to actually be called to cover. The Original Indictment's

---

[2] The HHS-OCR inquiry is a mandatory civil inquiry that occurs whenever a hospital self-reports a breach of protected patient information. It was at all times a separate inquiry from the Government's criminal investigation of the defendant. The Government requested and produced TCH's OCR Response and attached exhibits to the defendant out of an abundance of caution.

allegations that the Defendant did not have any TCH patients under his care in April 2023 and May 2023 were therefore correct based on the information the Government had at the time, and the OCR Response did not suggest otherwise.

In sum, none of the facts the defendant cites support his conclusion that the Government "should have known" that information presented to the original grand jury was false. And there is zero proof that the Government did in fact knowingly sponsor false testimony.  The Court should deny the motion.

### C. The Defendant's Request for the Superseding Indictment Transcript Is Meritless

Finally, the defendant has failed to meet his burden of showing a particularized need for the Superseding Indictment transcript.  He bases his request on little more than assumptions and speculation about the Government's theory of the case and what evidence the Government presented to the superseding grand jury. *See* Def. Mot. at 2, 8 (inaccurately claiming that "[t]he allegations in the indictment were built around the idea that Dr. Haim had no reason whatsoever to have access to [EPIC] after finishing a surgical rotation at TCH in January 2021" and therefore "there is simply no other way that the government could reasonably have gone about demonstrating false pretenses" in the superseding grand jury apart from debunked testimony that the defendant had no reason to return to TCH thereafter).

Essentially, the defendant is making a sufficiency of the evidence argument,

complaining that the Government's claims of false pretenses are now "unsupported" and "conclusory." (Def. Mot. at 4, 7). But as the Supreme Court has held, an indictment valid on its face is not subject to challenge that the grand jury indicted based on inadequate or incompetent evidence:

> If indictments were held open to the challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. . . . An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits. The Fifth Amendment requires nothing more.

*Costello v. United States*, 350 U.S. 359, 363 (1956). *See United States v. Georgalis*, 631 F.2d 1199, 1206 (5th Cir. 1980) ("Indictments may not be attacked merely upon the basis that there was insufficient or incompetent evidence presented to the grand jury."). It is for the ultimate trier of fact—the trial jury—to determine whether the Government has met its burden of proving the crimes alleged. Speculation regarding how the Government may prove its case is not a basis for dismissing an indictment or providing the defendant with grand jury transcripts.

IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny the defendant's motion

for grand jury transcripts.

Date:  October 25, 2024                    Respectfully submitted,

                                           ALAMDAR HAMDANI
                                           United States Attorney
                                           Southern District of Texas

                                   By:     <u>s/_____</u>
                                           Tina Ansari
                                           Tyler S. White
                                           Jessica Feinstein
                                           Assistant United States Attorneys
                                           1000 Louisiana Street, 25th Floor
                                           Houston, Texas 77002
                                           Tel.: (713) 567-9000

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this October 25, 2024, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all defense counsel of record.

<u>*s/ Jessica Feinstein*</u>
Jessica Feinstein
Assistant United States Attorney

15