UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § § | Criminal No. 24-CR-00298 |
| EITHAN HAIM | § § | |

**X CORP.'S MOTION TO INTERVENE
AND OPPOSITION TO USA'S MOTION
FOR ISSUANCE OF A GAG ORDER**

X Corp. hereby (1) moves to intervene in this action for the limited purpose of opposing the Government's Motion for Issuance of a Gag Order, Dkt. No. 105, and (2) files this opposition to the Government's Motion for Issuance of a Gag Order.

I.   **Introduction**

Stripped of its rhetoric, the Government's Motion for an order gagging the public speech of Defendant Eithan Haim and his counsel seeks to accomplish one goal: to suppress public reaction to the Government's use (or abuse) of prosecutorial discretion in this action. This high-profile criminal case has attracted sharp criticism (including by Dr. Haim and his counsel) of the Government's decision to prosecute a lone Texas physician for blowing the whistle on a medical scandal – criticism that the Government now characterizes as "the online bullying of prosecutors." ECF 105 at 6. What irony for this complaint to come from federal prosecutors, whose awesome powers and nearly limitless resources make them the Goliath to Dr. Haim's

David. And it is precisely because of their extraordinary power that prosecutors must be held accountable to the public and not permitted to hide behind a veil of court-imposed secrecy through litigation tactics such as sealing their filings from public view and seeking gag orders against defendants, the actions challenged in this motion.

Implicit in the Government's request for a gag order is an attempt to undercut the power that X Corp., through its social media platform "X," has afforded ordinary citizens to comment on – and indeed, make – the news. Free speech by users on X – in which X has a First Amendment interest – is a crucial component of public debate and news dissemination in today's United States, and this speech is directly at odds with unlawful prior restraints based on the meager showing set forth in the Government's Motion.

For the reasons discussed herein, X Corp. respectfully requests that the Court grant its motion to intervene in this action for the limited purpose of opposing the Government's Motion for Issuance of a Gag Order and deny the Government's Motion.

## II.   Background

### a. Proposed Intervenor

X Corp. is an American technology company that operates a social media platform known as "X" (formerly known as Twitter). The X platform allows its

hundreds of millions of unique users to electronically send posts containing text, images, and/or videos. After creating an account, a user can post their own content on the platform, and users may also respond to the posts of others, republish the posts of others, or convey approval or acknowledgment of another's post by "liking" the post. All of a user's posts (sometimes referred to as Tweets) appear on the "Following" "timeline" of other users who "follow" that user, or may appear in the "For You" timeline of other users based on algorithmic determinations of what a user may be interested in. These timelines are continuously updated by the platform and allow users a convenient method of viewing and interacting with the content.

The transition from Twitter (X's predecessor platform) to X has marked a fundamental change in the media ecosystem in the United States and beyond. Historically, Americans' access to news was mediated by a handful of institutional media companies beholden to the businesses and governments that regularly feature in the news. X Corp. sought to change this dynamic, in which too often the media – motivated by self-interest, not pursuit of the truth – obscured rather than illuminated the actions of the powerful.

X Corp. provides all its users with tools to create and promote online content. While users can still write individual posts commenting on the news of the day like they did on Twitter, they can also publish long-form journalism in the form of videos and articles and host live broadcasts. Important reporting, analysis, and commentary

frequently appear on X hours or even days before making their way to traditional outlets. In short, X is no longer a place for citizens to discuss stories they see in the legacy media. X *is* the media, and each of its users is empowered to be a journalist in their own right.

For these reasons, and in light of its massive number of active users (over 600 million monthly worldwide) and superior engagement rates, X has aptly been heralded as the global "town square." Given the enormous audience and engagement afforded to X users, X plays a unique and critical role in modern free speech in America, driving public conversations on newsworthy topics and serving as an alternative and competitor to legacy media. X Corp. prides itself on providing an open forum for public debate and discussion, and on its commitment to protecting free speech within the boundaries of the law.

### b. Relevant Case Background

On November 20, 2024, the Government filed a motion requesting that the Court impose a gag order on Dr. Haim and his counsel. ECF 105. Specifically, the Government asks the Court to prohibit Dr. Haim and his attorneys from making public statements or talking to the press, other than to "stat[e], without elaboration or any kind of characterization whatsoever, [t]he general nature of an allegation or defense made in this case, information contained in the public record of this case, scheduling information, [or] any decision made or order issued by the court which

is a matter of public record," or to "[e]xplain[], without any elaboration or any kind of characterization whatsoever the contents of substance of any motion or step in the proceedings [in the public record]." ECF 105 at 4-5. The Government also asks the Court to prohibit any statement to the press "that could interfere with a fair trial or otherwise prejudice the Defendant, the Government, or the administration of justice." *Id.*

In support of its request for these extreme prior restraints, the Government alludes to "numerous publicly available statements on X" posted by Dr. Haim and his counsel, and argues that this speech has the possibility to "interfere with a fair trial or otherwise prejudice the Government or the administration of justice" because it "disparage[s] the prosecutors" and discusses information that might be excluded in a one-day jury trial. ECF 105 at 1. The Government accuses Dr. Haim and his counsel of having "crossed a line, bombarding social media with inaccurate and inflammatory descriptions of pretrial proceedings that would never be admissible before a jury," and characterizes Dr. Haim's speech as "encourag[ing] the online bullying of prosecutors and creat[ing] heightened safety risks, serving as invitations to members of the media and the public to harass prosecutors." *Id.* at 5.

Yet while railing against the content of Dr. Haim's posts on X and acknowledging that they are "publicly available, and have been viewed by thousands (and in some cases, tens of thousands) of users" on X (ECF 105 at 2), the

5

Government filed copies of these X posts *under seal* (ECF 107 and 108), without any accompanying motion to seal or any explanation of why the exhibits should be hidden from public view. This filing followed hot on the heels of the Government filing multiple other documents under seal – including a motion of the Government's lead prosecutor to withdraw as counsel of record entirely. ECF 104.

Although the Government sees no issue in its own public heralding of its criminal prosecution of Dr. Haim[1] – and the extreme social stigma a federal criminal indictment brings – the Government's recent course of conduct suggests it believes it, unlike Dr. Haim, is entitled to hide behind a veil of secrecy during the prosecution. Unfortunately for the Government, decades of constitutional precedent foreclose its attempt to muzzle Dr. Haim's ability to express himself in the public square and require denial of the motion to gag in this case.

### III.   Argument

#### A.   X Corp. has standing to intervene to oppose the USA's motion for a gag order

For constitutional standing, a "plaintiff must have suffered an injury in fact" that is "fairly traceable to the challenged action" and that likely "will be redressed by a favorable decision." *United States v. Aldawsari*, 683 F.3d 660 (5th Cir. 2012) (*quoting Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)). In *Aldawsari*,

---

[1] *See* https://www.justice.gov/usao-sdtx/pr/doctor-charged-unauthorized-access-personal-information-pediatric-patients-texas.

a journalist sought to intervene to challenge a gag order barring parties to a criminal prosecution (and their representatives and attorneys) from communicating with the news media about the case. The government argued that the journalist could not establish injury in fact because of the failure to establish that anyone bound by the court's gag order would be willing to speak with the journalist about the case. *Id.* at 664. The Fifth Circuit disagreed and held the journalist had standing to present his constitutional claims, even in the absence of an identified willing speaker, because the criminal prosecution was "unquestionably newsworthy and of public interest," and there was "no dispute" that, if permitted, the journalist would attempt to speak with the parties or their counsel about the case. *Id.*

The *Aldawsari* court cited *Davis v. East Baton Rouge Parish School Bd.,* 78 F.3d 920 (5th Cir. 1996), which acknowledged a third party's standing to intervene to challenge confidentiality orders based on the First Amendment right to receive protected speech in cases where newsworthiness of the case is not disputed. *Davis,* 78 3d at 926; *see also Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 757 (1976) ("[W]here a speaker exists…the protection afforded is to the communication, to its source and its recipients both…we acknowledge[e] that this Court has referred to a First Amendment right to 'receive information and ideas,' and that freedom of speech 'necessarily protects the right to receive.'")

Standing is easily satisfied in this case, as the Government's gag order seeks to prevent identified willing speakers (Dr. Haim and his counsel) from publishing speech regarding a newsworthy topic on X Corp.'s public platform, indeed specifically citing Dr. Haim and his counsel's very use of that platform, viewed by tens of thousands of users according to the government's own argument, as a basis for its drastic sought remedy. The effect of the Government's gag order would be both to take down content currently on the X platform and to prevent the future dissemination of similar content on the X platform. That unquestionably impacts X's own First Amendment rights. *See Moody v. NetChoice, LLC,* 144 S.Ct. 2383, 2402 (2024) (holding a social media platform has its "own" interest in "the third-party speech that will be included in or excluded from" the platform).

Dr. Haim and his counsel have the right to use the X platform – which is unique among social media platforms due to its massive public reach (as opposed to platforms focused on messages among friends and family or that have far fewer active users and lower engagement rates) – to speak directly to the press, the public, and influential decision-makers. Likewise, those entities and individuals, including X Corp. itself, have the right to receive information and ideas communicated about an important criminal prosecution by its participants. *See Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. at 757.

Indeed, the United States Supreme Court has recognized the critical role the X platform serves in free speech and public discourse in this country. *See, e.g., O'Connor-Ratcliff v. Garnier,* 601 U.S. 206 (2024) (public official engages in state action subject to the First Amendment by blocking an individual from the official's personal Twitter/X account, which the official uses to communicate job-related matters to the public); *Knight First Amendment Institute at Columbia University v. Trump,* 928 F.3d 226 (2nd Cir. 2019) (President's blocking of users from his Twitter/X account because of their expressed political views violated their First Amendment right to free speech) (vacated as moot *sub nom. Biden v. Knight First Amendment Institute at Columbia University,* 141 S. Ct. 1220 (2021)). For these reasons, X has standing to challenge the government's gag order request.

**B.  The Government has not met its burden for issuance of a gag order.**

In its Motion, the Government goes through the motions of arguing that Dr. Haim and his counsel's statements on X "present a 'substantial likelihood' of prejudicing the court's ability to conduct a fair trial[.]" ECF 105 at 3 (quoting *United States v. Brown*, 218 F.3d 415, 427-28 (5th Cir. 2000)). Yet the Government does not hide its true motive for seeking a prior restraint on Dr. Haim and his counsel: the federal prosecutors who brought this case do not want to be criticized on social media. Indeed, the Government's real concern appears not to be the fairness of these proceedings, which are mentioned in passing, but rather, "the online bullying of

9

prosecutors." *Id.* at 6. As discussed below, the government's generalized fear of public criticism stemming from the Government's use (or abuse) of prosecutorial discretion is a legally inadequate basis for a gag order, not to mention profoundly at odds with centuries of precedent supporting the public right of access to court proceedings other than in narrow circumstances not present here.

In this case, the Government has attracted sharp criticism for its decision to prosecute a physician for blowing the whistle on a medical scandal involving a matter of public interest – permanent, physically altering transgender medical procedures on children, allegedly in violation of state law. On one side of this dispute is the mighty federal government, arguing with seemingly infinite resources. On the other is a single physician and his lawyers, with limited means and power. It is precisely because of this extraordinary power dichotomy that prosecutors cannot be allowed to immunize themselves from public comment about their actions. What's more, Dr. Haim's speech is a primary form of redress against the government's limitless resources – and X is a force multiplier for that speech. The Government's demand that the Court gag Dr. Haim and his counsel to prevent "the online bullying of prosecutors" – prosecutors who put themselves voluntarily into this position when they filed a highly political and controversial case – is an invitation that this Court violate the First Amendment and ignore the fundamental right of the public to criticize the government and should be rejected.

A gag order is an extreme and disfavored remedy. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018) ("Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions."). The Court should therefore examine whether the Government made a particularized showing of the kind of facts that warrant a gag order under governing law. Such an examination here shows the Government fell far short of making that kind of showing.

The "Legal Standard" section of the Motion focuses on "the court's ability to conduct a fair trial," explaining that gag orders are appropriate when parties' extrajudicial statements "threaten to undermine [the] basic tenet that the outcome of a trial must be de[c]ided by impartial jurors." ECF 105 at 3 (quoting *Brown*, 218 F.3d at 427–28 & 429) (some brackets in original) (internal quotation marks omitted). Despite its accurate recitation of the standard, the Government devotes a substantial portion of its short motion to its characterization of Dr. Haim and Ms. Burke's criticism of the prosecution team (while conveniently filing their actual statements under seal, leaving the public, including X Corp. and others who may want to intervene, only with the Government's self-serving description of their speech). Yet the Government never even tries to link its discussion of the "online bullying of prosecutors" to the governing legal standard. As a matter of common

sense, sharp criticism of prosecutors outside the courtroom does not prevent a fair trial from taking place. The Government's inability to cite a *single* case that indicates that a defendant who criticizes the prosecutor in a public forum should be gagged before trial speaks to the Motion's legal infirmity.

Contrary to the Government's groundless suggestion that criticism of the prosecutors warrants prior restraint, Dr. Haim and his counsel's speech criticizing the prosecution is the very kind of speech the First Amendment guards most vociferously. "[S]peech critical of the exercise of the State's power lies at the very center of the First Amendment," and speech "relating to alleged governmental misconduct" is "'speech which has traditionally been recognized as lying at the core of the First Amendment.'" *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1034–35 (1991) (quoting *Butterworth v. Smith,* 494 U.S. 624, 632 (1990)). "'[I]t would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted.'" *Id.* at 1035 (quoting *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 575 (1980)). "[T]here is a societal interest in having the discretion of the prosecutor's office reviewed." *Chicago Council of Laws. v. Bauer*, 522 F.2d 242, 253–54 (7th Cir. 1975) (footnote omitted). This is true even when criticism of government officials is particularly harsh. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 798 (4th Cir. 2018)

("The judicial process does not run and hide at those moments when public appraisal of its workings is most intense.")

As the Government's recitation of the legal standard suggests, the critical inquiry is how a party's speech would affect the fairness of the trial, not how it would affect counsel's feelings. *See Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 569 (1976) ("But on the record now before us it is not clear that further publicity, unchecked, would so distort the views of potential jurors that 12 could not be found who would, under proper instructions, fulfill their sworn duty to render a just verdict exclusively on the evidence presented in open court."). In *United States v. Trump*, the D.C. Circuit vacated a portion of the district court's gag order restricting President Trump's ability to discuss Special Counsel Jack Smith, explaining that Smith, "[a]s a high-ranking government official who exercises ultimate control over the conduct of this prosecution, . . . is no more entitled to protection from lawful public criticism than is the institution he represents." 88 F.4th 990, 1025–26 (D.C. Cir. 2023), *reh'g denied*, No. 23-3190, 2024 WL 252746 (D.C. Cir. Jan. 23, 2024) (citing *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978)). The Government has thus failed to hone its complaints about Dr. Haim and Ms. Burke's speech to the inquiry that matters—the effect of their speech on the fairness of the trial.

13

Perhaps recognizing that a defendant and his counsel's "online bullying" of the prosecutor is far from a compelling interest that justifies a gag order, the Government engages in hyperbolic speculation, suggesting that Dr. Haim and Ms. Burke's "online bullying" *may* "create heightened safety risks, serving as invitations to members of the media and the public to harass prosecutors." ECF 106 at 6. The Government's Motion is devoid of any evidence suggesting that such safety risks exist – or are even plausible. Such rank speculation, untethered to even a single salient example, is insufficient to warrant a gag order. *See Nebraska Press Ass'n*, 427 U.S. at 569 ("Reasonable minds can have few doubts about the gravity of the evil pretrial publicity can work, but the probability that it would do so here was not demonstrated with the degree of certainty our cases on prior restraint require.").

The Government's concern about "online bullying" based on Dr. Haim and Ms. Burke's criticism of the prosecution on X is a factual and legal chasm away from being able to carry the Government's burden. X and its hundreds of millions of users, on the other hand, have a right under the First Amendment to hear, assess, and debate public criticism of the Government's actions, notwithstanding any discomfort it may engender in the Government's agents. For these and other reasons, the Motion should be denied.

## IV.  Conclusion

For the foregoing reasons, X Corp., respectfully requests that the Court allow it to intervene in this case for the limited purpose of moving to oppose the USA's Motion for Issuance of a Gag Order (Dkt. No. 105), and to urge that the Court deny that Motion.

Date: November 26, 2024              Respectfully submitted,

By:  /s/John-Paul S. Deol
John-Paul S. Deol
SDTX No.: 3879052
Harmeet K. Dhillon*
Krista L. Baughman*
Jesse Franklin-Murdock*
Dhillon Law Group Inc.
177 Post Street Suite 700
San Francisco, California 94108
Tel.: (415) 433-1700

Attorneys for X Corp.

*pro hac vice pending

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of the above and foregoing document has been filed and served on November 26, 2024, using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/John-Paul S. Deol*
John-Paul S. Deol