# EXHIBIT A



**Chip Roy** ✓
@chiproytx

New whistleblower info sent to me & @JudiciaryGOP re: Dr. Eitan Haim, the Tx Doctor being targeted by Biden's DOJ for exposing Tx Children's child sex-change program. Thank you @realchrisrufo & @TuckerCarlson for reporting on this.  #WeaponizedDOJ cc: @Riley_Gaines_ @ChoooCole

Chairman Jim Jordan
Chairman, Judiciary Committee and
  Select Subcommittee on the Weaponization
  of the Federal Government
Chairman Chip Roy
Chairman, Subcommittee on the
  Constitution and Limited Government
U.S. House of Representatives
Rayburn House Office Building
Washington, DC 20515

January 24, 2024

Dear Chairmen Jordan and Roy,

We represent Dr. Eithan Haim in an ongoing criminal investigation by the U.S. Department of Justice ("DOJ") and other federal agencies. We write to raise our concerns regarding the conduct of this investigation against a whistleblower.

Dr. Haim has presented his story in the media. To summarize, in May 2023, he worked with investigative journalist Christopher Rufo to reveal that Texas Children's Hospital was performing transgender medical procedures on minors. The Hospital had previously publicly claimed that it had paused such medical interventions in response to a Texas Attorney General Opinion advising that those interventions could constitute criminal child abuse under Texas law. The day after the story was published, the Texas legislature voted to make them illegal.

As Dr. Haim has recounted, on June 23, 2023, the day of his graduation from medical residency, two agents from the Department of Health and Human Services' Office of Inspector General came to his house asking about "medical records." After Dr. Haim took his wife's advice not to submit to the interview without an attorney, the agents handed him a target letter. It stated that Dr. Haim was a "potential target" in an unspecified criminal investigation and asked him to submit to an interview with counsel. The letter was signed by Assistant U.S. Attorney Tina Ansari of the U.S. Attorney's Office for the Southern District of Texas.

After we were retained, attorneys working on this matter had several discussions with the prosecutor, Ms. Ansari. We are now presenting, for the first time, information about those discussions. This information is appropriate for consideration by you, the Judiciary Committee, the Subcommittee on the Constitution and Limited Government, and the Select Subcommittee on the Weaponization of the Federal Government.

the agents to tell her what the alleged crime was. According to her, DOJ had also already tasked FBI and possibly Homeland Security agents to assist in the investigation, and they had already been subpoenaing records.

**The initial investigation was premised on an easily disproved falsehood.** The prosecutor alleged from the beginning that the medical records that Dr. Haim allegedly sent to Rufo and that were published included children's names. The prosecutor confirmed this no fewer than four times over several months. Yet it is obvious from a quick glance that all patient information is redacted. Thus, either someone intentionally misrepresented this critical fact, or the investigation proceeded without anyone verifying the most basic facts about what happened.

**Before reviewing the evidence, the DOJ prosecutor asked Dr. Haim to admit wrongdoing to avoid felony prosecution.** Before reviewing any evidence or even knowing what the criminal HIPAA statute proscribed, the prosecutor told us that Dr. Haim would have to apologize to the "victims" if he wanted her help to avoid a felony conviction. We note that a basic HIPAA violation is a misdemeanor and essentially never prosecuted absent some additional, more significant crime.

**Even after recognizing her limited understanding of the law, the DOJ prosecutor discussed aggressively prosecuting Dr. Haim.** After acknowledging not knowing what information HIPAA protects, the prosecutor still asserted that Dr. Haim had released "personal information" that affected people's lives. She stated that

express his opinion. But HIPAA regulations permit the disclosure of even protected information (not released here), including to stop egregious medical misconduct. *See* 45 C.F.R. § 164.512.

**The DOJ prosecutor brought Dr. Haim's wife into it.** Dr. Haim's wife was reasonable and within her rights to counsel her husband to postpone the interview. Yet the prosecutor claimed that Mrs. Haim had interfered with a criminal investigation. Mrs. Haim was at the time (and still is) undergoing a federal background investigation to be an Assistant U.S. Attorney in Texas. The prosecutor (who holds the same position) said that she and the agents would not mention Mrs. Haim's behavior to the background investigators "unless [Mrs. Haim] becomes difficult." The prosecutor raised Mrs. Haim's purported interference again on a later call. While Mrs. Haim has started work as a civil AUSA, she is still vulnerable to retaliation through denial of a security clearance.

**The DOJ prosecutor directed us to contact her using her personal cell phone number.** She explained that although she has a work cell phone, she carries her personal cell phone because she "can't do two phones" and directed us to call her personal phone for multiple meetings. This practice potentially puts records regarding a criminal investigation on an unsecured device and outside the reach of DOJ records retention policies.

We believe that the conduct of this investigation and prosecution is relevant to your

1:19 PM · Jan 24, 2024 · **454.7K** Views

**557** Reposts   **48** Quotes   **1,479** Likes   **99** Bookmarks

Chairman Jim Jordan
Chairman, Judiciary Committee and
  Select Subcommittee on the Weaponization
  of the Federal Government
Chairman Chip Roy
Chairman, Subcommittee on the
  Constitution and Limited Government
U.S. House of Representatives
Rayburn House Office Building
Washington, DC 20515

January 24, 2024

Dear Chairmen Jordan and Roy,

We represent Dr. Eithan Haim in an ongoing criminal investigation by the U.S. Department of Justice ("DOJ") and other federal agencies. We write to raise our concerns regarding the conduct of this investigation against a whistleblower.

Dr. Haim has presented his story in the media. To summarize, in May 2023, he worked with investigative journalist Christopher Rufo to reveal that Texas Children's Hospital was performing transgender medical procedures on minors. The Hospital had previously publicly claimed that it had paused such medical interventions in response to a Texas Attorney General Opinion advising that those interventions could constitute criminal child abuse under Texas law. The day after the story was published, the Texas legislature voted to make them illegal.

As Dr. Haim has recounted, on June 23, 2023, the day of his graduation from medical residency, two agents from the Department of Health and Human Services' Office of Inspector General came to his house asking about "medical records." After Dr. Haim took his wife's advice not to submit to the interview without an attorney, the agents handed him a target letter. It stated that Dr. Haim was a "potential target" in an unspecified criminal investigation and asked him to submit to an interview with counsel. The letter was signed by Assistant U.S. Attorney Tina Ansari of the U.S. Attorney's Office for the Southern District of Texas.

After we were retained, attorneys working on this matter had several discussions with the prosecutor, Ms. Ansari. We are now presenting, for the first time, information about those discussions. This information is appropriate for consideration by you, the Judiciary Committee, the Subcommittee on the Constitution and Limited Government, and the Select Subcommittee on the Weaponization of the Federal Government.

**The government investigated Dr. Haim with exceptional speed.** HHS OIG agents appeared at Dr. Haim's house a little over a month after Rufo published his story. By then, DOJ had already issued a target letter. This is exceptionally fast, even for serious criminal OIG investigations. The DOJ prosecutor further confirmed by email that Dr. Haim was indeed a "target."

**Yet the DOJ prosecutor then admitted that she had never even reviewed the purported evidence against Dr. Haim.** Under DOJ policy, a target is a "putative defendant," meaning that there is sufficient evidence and a sufficient likelihood of conviction to warrant bringing criminal charges. Nevertheless, the prosecutor had not reviewed the purported evidence against Dr. Haim—she was relying entirely on the agents to tell her what the alleged crime was. According to her, DOJ had also already tasked FBI and possibly Homeland Security agents to assist in the investigation, and they had already been subpoenaing records.

**The initial investigation was premised on an easily disproved falsehood.** The prosecutor alleged from the beginning that the medical records that Dr. Haim allegedly sent to Rufo and that were published included children's names. The prosecutor confirmed this no fewer than four times over several months. Yet it is obvious from a quick glance that all patient information is redacted. Thus, either someone intentionally misrepresented this critical fact, or the investigation proceeded without anyone verifying the most basic facts about what happened.

**Before reviewing the evidence, the DOJ prosecutor asked Dr. Haim to admit wrongdoing to avoid felony prosecution.** Before reviewing any evidence or even knowing what the criminal HIPAA statute proscribed, the prosecutor told us that Dr. Haim would have to apologize to the "victims" if he wanted her help to avoid a felony conviction. We note that a basic HIPAA violation is a misdemeanor and essentially never prosecuted absent some additional, more significant crime.

**Even after recognizing her limited understanding of the law, the DOJ prosecutor discussed aggressively prosecuting Dr. Haim.** After acknowledging not knowing what information HIPAA protects, the prosecutor still asserted that Dr. Haim had released "personal information" that affected people's lives. She stated that if she thought Dr. Haim had violated the law, she would take him to trial by jury, even "on a technicality" and without concern for losing.

**The DOJ prosecutor stated that the families of the "victims," whom she had talked to and sympathized with, would sue Dr. Haim if there were no criminal charges.** Despite claiming to hold no opinion on the issue, the prosecutor defended the transgender medical interventions, claiming that the families were in tears because their children were suicidal and the interventions represented their "last hopes." She also asserted that the families would sue Dr. Haim even if he avoided a criminal charge.

**The DOJ prosecutor labeled the doctors performing transgender medical interventions on minors and the Hospital concealing those procedures as "victims."** The prosecutor claimed that those doctors' names were included in the otherwise redacted medical records and they had been threatened. She stated that she was searching other criminal statutes to see whether she could prosecute Dr. Haim for causing this backlash. The prosecutor balked at our assertion that the Hospital itself had potentially engaged in deceptive and fraudulent conduct.

**The DOJ prosecutor insisted that Dr. Haim had no right to blow the whistle.** The prosecutor insisted that it was not Dr. Haim's "job" to try to stop the pediatric transgender program and that he should have put up a banner on the highway to express his opinion. But HIPAA regulations permit the disclosure of even protected information (not released here), including to stop egregious medical misconduct. *See* 45 C.F.R. § 164.512.

**The DOJ prosecutor brought Dr. Haim's wife into it.** Dr. Haim's wife was reasonable and within her rights to counsel her husband to postpone the interview. Yet the prosecutor claimed that Mrs. Haim had interfered with a criminal investigation. Mrs. Haim was at the time (and still is) undergoing a federal background investigation to be an Assistant U.S. Attorney in Texas. The prosecutor (who holds the same position) said that she and the agents would not mention Mrs. Haim's behavior to the background investigators "unless [Mrs. Haim] becomes difficult." The prosecutor raised Mrs. Haim's purported interference again on a later call. While Mrs. Haim has started work as a civil AUSA, she is still vulnerable to retaliation through denial of a security clearance.

**The DOJ prosecutor directed us to contact her using her personal cell phone number.** She explained that although she has a work cell phone, she carries her personal cell phone because she "can't do two phones" and directed us to call her personal phone for multiple meetings. This practice potentially puts records regarding a criminal investigation on an unsecured device and outside the reach of DOJ records retention policies.

We believe that the conduct of this investigation and prosecution is relevant to your ongoing work investigating the Department of Justice and the weaponization of the federal government. We are willing to assist in your investigation of this conduct.

Sincerely,

Marcella Burke, Esq.
Jeffrey A. Hall, Esq.
Mark D. Lytle, Esq.

*Counsel for Dr. Eithan Haim*